R. Shawn Oller, Bar No. 019233
soller@littler.com
Carlos B. Gutierrez, Bar No. 025063
cgutierrez@littler.com
LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, Arizona 85016
Telephone:    602.474.3600
Facsimile:    602.957.1801

Attorneys for Defendant
Fitness Alliance, LLC d/b/a EoS Fitness

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wilfredo Cruz, | Case No.  2:24-cv-02926-JJT |
| Plaintiff, | **DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| Fitness Alliance, LLC d/b/a EoS Fitness, | |
| Defendant. | |

Defendant Fitness Alliance, LLC d/b/a EoS Fitness ("EoS"), respectfully requests that the Court compel arbitration of Plaintiff Brian Wilfredo Cruz's ("Plaintiff") claims against it and stay all proceedings pending completion of arbitration.

## I.    INTRODUCTION

Plaintiff's Complaint (Doc. 1) alleges Plaintiff's "employment discrimination lawsuit is based on" (1) Title VII of the Civil Rights Act of 1964 for "employment discrimination on the basis of race, color, religion, gender, or national origin," (2) the Rehabilitation Act of 1973 "for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance," (3) the Uniformed Services Employment and Reemployment Rights Act of 1994

LITTLER MENDELSON, P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ  85016
602.474.3600

(USERRA), (4) the Civil Rights Act of 1991, (5) negligent supervision, and (6) failure to provide a reasonable accommodation. (Doc. 1 at 1.) Plaintiff also alleges his "Employment Discrimination Complaint" involves the termination of his employment, failure to promote him, retaliation, terms and conditions of his employment, harassment, workplace defamation, and hostile work environment. (*Id.*) According to the Complaint, all of Plaintiff's claims arise from his employment with EoS. Plaintiff, however, is a party to a legally enforceable agreement in which he expressly agreed to submit any dispute relate to or arising from his employment with EoS—including employment discrimination, Title VII, harassment, retaliation, and disability related claims—to final and binding arbitration under the Federal Arbitration Act.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Plaintiff's Employment with EoS.

On October 31, 2019, Plaintiff was offered a position as Fitness Consultant with EoS for its club located in Ahwatukee, Arizona. (Declaration of Helena Bermingham ("Bermingham Decl."), attached as **Exhibit A**, ¶ 12, Ex. 1.) Plaintiff's employment with EoS terminated in December 2023. (*Id.*, ¶ 22.)

### B.    EoS's Onboarding Process.

EoS utilizes ADP Recruiting Management ("ADP RM") for electronic signature of employment-related electronic documents to applicants and employees. (Bermingham Decl. ¶ 5.) EoS also utilizes an application system through ADP RM to manage its application and hiring process and archive certain employment-related documents. (*Id.*, ¶ 6.) The first time a candidate elects to electronically sign the application, the system prompts the applicant to provide their full name and provides the following warning:

> "By entering your name, you consent to submit your employment application and all related forms, documents and information electronically. You further consent to conduct any matters related to the recruiting, application, background check and/or onboarding process electronically. Typing your name in the textbox on a form, and clicking on "Accept", constitutes your electronic signature."

(*Id.*, ¶ 8.)

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ  85016
602.474.3600

Once an applicant has accepted a verbal offer of employment, they will be sent an offer letter and onboarding packet via ADP RM. (*Id.*, ¶ 10.) The applicant receives these documents through the email address they provided to EoS during the application process. (*Id.*) Therefore, only the applicant can access the offer letter and packet through the link sent to their email address and the ADP RM login credentials the applicant created. (*Id.*) Once in the ADP RM portal, the applicant has access to all documents provided to them to review and sign at their discretion. (*Id.*)

By completing this process, it allows the candidate thereafter to simply type their name next to each agreement, indicating their intent to be bound by the same. (*Id.*, ¶ 11.) Additionally, once the offer letter is extended, the candidate is prompted to confirm their legal name, date of birth, and social security number. (*Id.*) At the conclusion of each agreement within the onboarding packet, which includes an arbitration agreement, the applicant is required to enter his or her legal name to acknowledge and agree to its terms. (*Id.*)

### C.    Plaintiff Agreed to Arbitrate His Employment-Related Claims.

Plaintiff was sent a link to the onboarding paperwork through DocuSign. (Bermingham Decl. ¶ 13.) The onboarding paperwork included a Mutual Arbitration Policy ("MAP"). (*Id.*, ¶ 13, Ex. 2.) On October 31, 2019, Plaintiff electronically signed and acknowledged the MAP and agreed to its terms. (*Id.,* ¶¶ 13-15, Ex. 2.) The MAP provides, in pertinent part:

> EoS Fitness has adopted and implemented this Mutual Arbitration Policy ("MAP") as a mandatory condition of employment.
>
> The MAP applies to all EoS Fitness employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with EoS Fitness or the termination of that employment. Examples of the type of disputes or claims covered by the MAP include, but are not limited to, claims against employees for fraud, conversion, misappropriation of trade secrets, or claims by employees for wrongful termination of employment, breach of contract, fraud, employment discrimination, harassment or retaliation under the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII of the

LITTLER MENDELSON, P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1   Civil Rights Act of 1964 and its amendments, the California Fair
2   Employment and Housing Act or any other state or local anti-discrimination
3   laws, tort claims, wage or overtime claims or other claims under the Labor
    Code, or any other legal or equitable claims and causes or action recognized
4   by local, state or federal law or regulations . . .

5   <u>Your decision to accept employment or to continue employment with EoS
    Fitness constitutes your agreement to be bound by the MAP</u>. Likewise, EoS
6   Fitness agrees to be bound by the MAP. This mutual obligation to arbitrate
7   claims means that both you and EoS Fitness are bound to use the MAP as the
    only means of resolving any employment-related disputes. This mutual
8   agreement to arbitrate claims also means that both you and EoS Fitness
9   forego any right either may have to a jury trial on claims relating in any way
    to your employment . . ."

10
11  The MAP shall be governed solely by the Federal Arbitration Act ("FAA"),
    9 U.S.C. § 1, *et seq.*

12  (*Id.*, Ex. 2 at 2-3.) (emphasis in original).

13          Plaintiff expressly agreed in the MAP to arbitrate all employment-related disputes:

14  I acknowledge that I have received and reviewed a copy of EoS Fitness'
15  Mutual Arbitration Policy ("MAP"), and I understand that <u>it is a condition of
    my employment and a condition of my continued employment with</u> EoS
16  Fitness. I agree that it is my obligation to make use of the MAP and to submit
    to final and binding arbitration any and all claims and disputes that are related
17  in any way to my employment or the termination of my employment with
18  EoS Fitness."

19  I understand that final and binding arbitration will be the sole and exclusive
20  remedy for any such claim or dispute against EoS Fitness or its parent,
    subsidiary, sister or affiliated companies or entities, and each of its and/or
21  their employees, officers, directors, and agents ("the Company") and that, by
    agreeing to use arbitration to resolve my dispute, both the Company and I
22  agree to forego any right we each may have had to a jury trial on issues
23  covered by the MAP . . . ."

24  (*Id.*, Ex. 2 at 3.) (emphasis in original).

25          Plaintiff's claims arise from his employment with EoS. *See* generally, Complaint
26  (Doc. 1). Indeed, Plaintiff alleges his Complaint is an "Employment Discrimination
27  Complaint" and that his lawsuit is based on federal statutes prohibiting employment
28  discrimination along with common law workplace claims. (Doc. 1 at 1.) All of Plaintiff's

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ 85016
602.474.3600

allegations concern his employment with EoS and the alleged treatment he received by EoS. (Doc. 1.) Plaintiff concludes that EoS wrongfully terminated his employment and defamed him and demands damages for his alleged loss. (Doc. 1 at 10.) By accepting employment with EoS and signing the MAP, Plaintiff entered into a valid arbitration agreement wherein he agreed to, *inter alia*, arbitrate all claims arising out of his employment, including every claim he asserted in the Complaint.[1]

On October 31, 2019, the same date Plaintiff electronically signed the MAP, he also electronically signed other agreements within the onboarding packet he received, including the following: Commission Structure; EoS Fitness National Handbook; Handbook Supplement Arizona 2019; On-Duty Meal Waiver; Employee Confidentiality, Non-Solicitation, Non-Competition, & Inventions Agreement; Equal Employment Opportunity and Anti-Discrimination Policy; General Appearance, Photographic & Intellectual Property Release Form; Employee Exercise Waiver; Social Media Guidelines; and Biometric Information Privacy Policy. (Bermingham Decl. ¶¶ 16-17, Ex. 2 at 1-2, 4-10.)

### D.    Plaintiff Has Refused to Arbitrate His Claims.

On January 31, 2025, defense counsel's office emailed Plaintiff a letter reminding him he signed an arbitration agreement with EoS and requested that he abide by it. (**Exhibit B**.) In response, Plaintiff emailed counsel for EoS the same day and declined to arbitrate his claims. (**Exhibit C**.) The parties thereafter exchanged additional correspondence and defense counsel's office emailed Plaintiff a copy of his onboarding documents and MAP he signed with EoS but Plaintiff still refused to arbitrate his claims.

## III.    LAW AND ARGUMENT

### A.    The Federal Arbitration Act Governs the Parties' Agreements.

The Federal Arbitration Act (the "FAA") requires courts to enforce arbitration agreements "involving commerce." 9 U.S.C. § 2. Specifically, the FAA provides that "[a]

---

[1] Per the MAP, the only claims not subject to arbitration are workers' compensation claims, unemployment insurance claims, or any claims that could be made to the National Labor Relations Board. (Bermingham Decl., Ex. 2 at 2.) None of these claims are at issue.

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ 85016
602.474.3600

written provision in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility, LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011), citing to 9 U.S.C. § 2. The MAP is an agreement "involving commerce" that requires Plaintiff to arbitrate the claims that he is pursuing in this litigation.

EoS is engaged in the business of the operation of fitness clubs throughout Arizona, California, Nevada, Florida, Texas, and Utah. EoS currently operates 46 clubs in Arizona, 23 clubs in California, 18 clubs in Nevada, 23 clubs in Florida, 37 clubs in Texas, and 15 clubs in Utah where individual customers pay a monthly fee, and/or personal training fees, and/or small group class fees in order to participate in a variety of fitness activities. (Bermingham Decl. ¶ 3.)

The Supreme Court has "interpreted the term involving commerce in the FAA as the functional equivalent of the more familiar term affecting commerce -- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2003). The FAA provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," therefore, it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" – that is, "within the flow of interstate commerce." *Id.* at 56 (citing and quoting *Allied-Bruce Terminix Cos*., 513 U.S. 265, 273 (1995); *Perry v. Thomas*, 482 U.S. 483, 490 (1987)). Indeed, as demonstrated in *Alafabco*, the FAA's applicability is so broad that it applies even when an arbitration agreement is executed in a single state by residents of that state as long as one of the parties to that agreement engages in business in multiple states. *Alafabco,* 539 U.S. at 57.

EoS markets its services through the internet and recruits employees through the internet. (Bermingham Decl. ¶ 4.) Further, EoS operates 162 fitness clubs across Arizona, California, Nevada, Florida, Texas, and Utah. (*Id*., ¶ 3.) Customers pay EoS fees for monthly memberships, personal training, and/or group classes. (*Id*.) The nature and scope

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1    of EoS's business demonstrates that is engaged in interstate commerce. Consequently, the

2    FAA governs the MAP because it involves commerce under *Alafabco*.

3    **B.    Federal Law Requires Plaintiff to Arbitrate His Claims.**

4    Congress enacted the FAA "in response to widespread judicial hostility to arbitration

5    agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 321, 131 S. Ct. 1740, 1745

6    (2011). The purpose of the FAA was to overcome the courts' reluctance to enforce

7    arbitration agreements. *Allied-Bruce Terminix Cos.*, 513 U.S. at 70 (1995). Thus, the FAA

8    requires courts to enforce arbitration agreements, thereby reflecting a "liberal federal policy

9    favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

10   460 U.S. 1, 24 (1983). The Supreme Court noted the significant benefits of arbitrating

11   employment claims in *Circuit City Stores v. Adams*, 532 U.S. 105, 122-23 (2001), and

12   reiterated its long line of decisions upholding arbitration agreements in the employment

13   context in *Rent-A-Center v. Jackson*, 561 U.S. 63, 122 S. Ct. 2772 (2010). Consequently,

14   arbitration provisions in employment-related agreements are clearly enforceable under the

15   FAA. *See Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 941 (D. Ariz. 2011).

16   The FAA places arbitration agreements on an equal footing with all other contracts.

17   *See, e.g., Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *Gilmer v.

18   Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Moses H. Cone Mem'l Hosp.*, 460

19   U.S. 1 at 22; *Coup*, 823 F. Supp. 2d at 939 (quoting *Gilmer,* 500 U.S. at 25). In order to

20   further the liberal federal policy favoring arbitration, the FAA requires that federal courts

21   "'rigorously enforce agreements to arbitrate.'" *Coup*, 823 F. Supp. 2d at 940 (quoting *Dean

22   Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Any doubts concerning the scope

23   of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*,

24   460 U.S. at 24-25. Similarly, any ambiguities in the contract should be resolved in favor of

25   arbitration. *Coup*, 823 F. Supp. 2d at 941-942 (citing *Moses H. Cone Mem'l Hosp.*, 460

26   U.S. at 24-25) ("Because of the liberal Arizona and federal policies favoring arbitration,

27   'any doubts concerning the scope of arbitrable issues should be resolved in favor of

28   arbitration, whether the problem at hand is the construction of the contract language itself

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ  85016
602.474.3600

7

or an allegation of waiver, delay, or a like defense to arbitrability.'").

As this Court has explained, "the standard for demonstrating arbitrability is not a high one; in fact, [the] court has little discretion to deny an arbitration motion, since the FAA is phrased in mandatory terms." *Coup*, 823 F. Supp. 2d at 941 (citing *Smith v. AutoNation, Inc.,* 2011 U.S. Dist. LEXIS 14150, at *1 (D. Ariz. Feb. 2, 2011)). Indeed, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id*. (quoting *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 934 (9th Cir. 2011)) (emphasis in the original). In determining whether to compel arbitration, a district court cannot review the merits of the claims; rather, it "is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000)).

### C.    The MAP is Valid and Enforceable.

Generally, courts apply state contract law in determining the enforceability of an arbitration agreement that falls within the FAA's ambit. *Coup*, 823 F. Supp. 2d at 941 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). Given that Plaintiff was an Arizona resident at the time of his execution of the MAP and was employed by EoS to work in Arizona, Arizona law determines whether the MAP is valid. *See Coup*, 823 F. Supp. 2d at 941 (citing *Ticknor v. Choice Hotels Int'l, Inc*., 265 F.3d 931, 937 (9th Cir. 2001)). In deciding whether to compel arbitration, the trial court must initially determine two "gateway" issues: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002).

For an enforceable contract to exist under Arizona law, "there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ 85016
602.474.3600

8

can be ascertained." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Ct. App. 1983). "An offer is . . . a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. at 212, 677 P.2d at 1320, quoting Restatement (Second) of Contracts § 24 (1981). The offer must express the terms of the contract with reasonable certainty to establish an enforceable contract. *Schade v. Diethrich*, 158 Ariz. 1, 10-11, 760 P.2d at 1059-60 (1988) (adopting the "reasonable certainty" standard of the Restatement (Second) of Contracts § 33(2)). An offer may be revoked at any time before its acceptance is communicated to the offeror, but not afterwards. *Butler v. Wehrley*, 5 Ariz. App. 228, 232, 425 P.2d 130, 134 (Ct. App. 1967) ("[t]he revocation of an offer . . . must ordinarily be communicated to prevent an acceptance from changing it into a binding contract, and it is not communicated to the offeree unless it is actually brought to his knowledge.").

Plaintiff filed his Complaint against EoS in violation of his agreement to arbitrate his claims. The MAP is a valid and enforceable contract under Arizona law. EoS presented Plaintiff with the MAP, Plaintiff considered it, and he assented to its terms without change via electronic signature. If Plaintiff did not want to become an EoS employee and accept the benefits of the MAP, he simply could have rejected the offer and decided not to sign the MAP. By agreeing to the terms and conditions of the MAP, however, and accepting the benefit of this agreement, including his employment with EoS, Plaintiff is therefore bound by the agreement to arbitrate. *See Carroll v. Lee*, 148 Ariz. 10, 13, 712 P.2d 923, 926 (Ariz. 1986) ("a promise for a promise constitutes adequate consideration"); *see also Mattison v. Johnston*, 150 Ariz. 109, 113, 730 P.2d 286, 290 (Ariz. Ct. App. 1986). EoS has satisfied the first "gateway" issue because there exists a valid and legally enforceable arbitration agreement between the parties.

The next "gateway" issue is whether the MAP covers the issues in Plaintiff's Complaint. In construing the terms of arbitration agreements, district courts apply state principles of contract interpretation, though giving "due regard to the federal policy in favor

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ 85016
602.474.3600

9

of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Coup*, 823 F. Supp. 2d at 940-941 (citing *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). In Arizona, "[a] general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, 218 P.3d 1045, 1050 (Ct. App. 2009) (citing *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.,* 213 Ariz. 83, ¶12, 138 P.3d 1210, 1213 (App. 2006)). The purpose of contract interpretation is to determine the parties' intent and enforce that intent. *Id.* (citing *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993)). "Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Id.* (citing *Mining Inv. Group, L.L.C. v. Roberts,* 217 Ariz. 635, 639, 177 P.3d 1207, 1211 (App. 2008)).

Plaintiff's employment related claims, *i.e.*, his "employment discrimination lawsuit," fall squarely within the arbitrable claims set forth in the MAP. Plaintiff agreed to arbitrate all claims arising out of his employment or separation from employment with EoS (with exceptions not applicable here). (Bermingham Decl., Ex. 2 at 2-4.) Consequently, the MAP covers Plaintiff's claims, and the Court must order Plaintiff to submit them to arbitration.

The Supreme Court has interpreted the FAA as requiring district courts to direct the parties to proceed with arbitration whenever a dispute is, as here, subject to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When arbitration is compelled and a party requests a stay pending arbitration, Section 3 of the FAA compels the court to stay the proceeding. *See* 9 U.S.C. § 3 ("upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement") (emphasis added); *see also Smith v. Spizzirri*, 601 U.S. 472 (2024). Here, Plaintiff's claims must be arbitrated, and all issues

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1    will be decided during arbitration. Accordingly, the Court should stay this case.

2    **IV.    CONCLUSION**

3           All of the claims that Plaintiff is asserting against EoS in this action are subject to

4    mandatory and binding arbitration in accordance with the MAP between the parties. Given

5    that the MAP is a valid and legally enforceable agreement that covers the claims at issue in

6    Plaintiff's Complaint, the Court must grant EoS's Motion compelling Plaintiff to arbitration

7    and staying the instant action pending conclusion of arbitration proceedings. EoS also

8    requests any other relief which this Court deems proper.

9

10

11   Dated:  April 15, 2025

12                                                  */s/ Carlos B. Gutierrez*
                                                   R. Shawn Oller
13                                                 Carlos B. Gutierrez
                                                   LITTLER MENDELSON, P.C.
14
                                                   Attorneys for Defendant
15                                                 Fitness Alliance, LLC d/b/a EoS Fitness

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ  85016
602.474.3600

11

1

2    I hereby certify that I electronically
      transmitted the attached document to the
3    Clerk's Office using the CM/ECF System
      for filing and transmittal of a Notice of
4    Electronic Filing to the following
      CM/ECF registrants, and emailed and
5    mailed a copy of same to the following if
      non-registrants, this 15th day of April,
      2025, to:

6    Brian Wilfredo Cruz
7    4903 W Thomas Rd, Apt 261
      Phoenix, AZ 85031
8    (602) 813-4249
      brian.w.cruz222@gmail.com

9    *Pro Se Plaintiff*

10

11   */s/ Brooke Williamson*
      Brooke Williamson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON,
P.C.
Attorneys at Law
Camelback Esplanade
2425 East Camelback
Road
Suite 900
Phoenix, AZ 85016
602.474.3600