**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wilfredo Cruz, | No. CV-24-02926-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Fitness Alliance LLC *doing business as* EOS Fitness, | |
| Defendant. | |

At issue is Defendant Fitness Alliance LLC's, *dba* EōS Fitness's Motion to Compel Arbitration (Doc. 17, Motion), to which *pro se* Plaintiff Brian Wilfredo Cruz filed a Response (Doc. 20, Pl. Response), Defendant filed a Reply (Doc. 21, EōS Reply), and Plaintiff filed a Sur-Reply (Doc. 25, Pl. Sur-Reply).[1] The Court will resolve the Motion without oral argument. LRCiv 7.2(f).

**I.  Background**

This case concerns alleged discriminatory conduct against Plaintiff Brian Wilfredo Cruz during his employment at Fitness Alliance ("EōS Fitness"). The Motion at issue here does not pertain to the merits of Plaintiff's claims, but instead concerns the threshold question of whether the claims are subject to mandatory arbitration. The Court therefore offers the following simplified version of the factual allegations underpinning this case.

---

[1] Plaintiff presents in briefing additional issues of attorney bad faith misconduct and misleading evidence from Defendant's Human Resources representative. The Court will not address those issues here, but rather will discuss them by separate Order resolving the respective filings (Docs. 26, 28).

Plaintiff worked for Defendant from 2019 to 2023. (EōS Reply at 2; *see* Doc. 1, Compl.) He was offered a position as a Fitness Consultant with EōS Fitness's Ahwatukee, Arizona location in October 2019. (EōS Reply at 2.) The offer letter and attached employment contract included an arbitration agreement provision that required mutual arbitration by both Plaintiff and Defendant of "all disputes relating to or arising out of an employee's employment with EōS Fitness or the termination of that employment." (Motion, Ex. 1 (Offer Letter); Motion, Ex. 2 (Employment Contract) at 24.) Each section of the employment contract, including the arbitration agreement provision, includes Plaintiff's typed name as an electronic signature. (Employment Contract at 24.)

During his time at EōS Fitness, Plaintiff worked various locations, including the Ahwatukee location, the Mesa location, and the Ray and Rural location, in various roles.[2] His original employment offer listed a position at the Ahwatukee location. (Offer Letter.) At each of the EōS Fitness locations at which he worked, Plaintiff alleges discriminatory conduct by EōS employees and management. (*See generally* Compl.)

The parties disagree on Plaintiff's employment status in 2020. Plaintiff alleges that he was "laid off" and "asked to return several months later" without being "presented with or asked to sign a new arbitration agreement." (Pl. Response at 1.) Defendant contends in the alternative that Plaintiff and all other hourly employees were placed on "unpaid furlough [. . .] as a result of the COVID-19 pandemic" and were not laid off but rather "remained active employees with the company." (EōS Reply at 3.)

On October 25, 2024, Plaintiff brought this action, seeking relief for various alleged discriminatory conduct against him during his time at EōS Fitness. Plaintiff alleges that EōS employees harassed him with "veteran suicide jokes [. . .], verbal sexual harassment, sexist remarks, nonconcent [*sic*] touching, [r]acism, [and] bullying," among other alleged misconduct, and that "despite multiple complaints to HR, there was no intervention."

---

[2] The Complaint and subsequent briefing are unclear regarding the exact timeline and geography of Plaintiff's employment with EōS Fitness. As accurately as it can, given the vagueness in briefing and the disputed accuracy of Ms. Bermingham's Declaration, the Court will present the relationship history between Plaintiff and Defendant.

(Compl. at 2–3.) In lieu of an Answer, Defendant filed the Motion, arguing that regardless of whether Plaintiff's claims have merit, they must be dismissed from this Court because Plaintiff's employment contract contained a mandatory arbitration provision. (*See generally* Motion.)

## II.     Legal Standard

The arbitration agreement at issue here is governed by the Federal Arbitration Act (FAA). *See* 9 U.S.C. § 2. When presented with a dispute implicating the FAA, a court must compel arbitration if the court determines that a valid agreement to arbitrate exists and that the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). District courts apply state law principles governing the formation of contracts to determine whether a valid arbitration agreement exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under the FAA, "agreements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citation and internal quotations marks omitted).

To resolve a motion to compel arbitration under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must determine (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the arbitration agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If both elements are met, the FAA requires the court to enforce the arbitration agreement. *Id.* District courts apply state law principles governing the formation of contracts to determine whether a valid arbitration agreement exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56, Fed. R. Civ. P." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011). That is, "[i]f there is doubt as to whether such an agreement exists, the matter, upon

a proper and timely demand, should be submitted to a jury. Only where there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Generally, the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Hoffman v. Citibank*, 546 F.3d 1078, 1082 (9th Cir. 2008). "However, where the issue is whether there exists an agreement to arbitrate, the party seeking to enforce an arbitration agreement bears the burden of showing that it exists." *Longnecker v. American Ex. Co*, 23 F. Supp. 3d 1099, 1106 (D. Ariz. 2014). Any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

### III. Discussion

#### A. Arbitration Agreement Validity

Determining whether to compel arbitration in the instant case first requires a determination of the validity of the arbitration agreement itself—that is, whether the arbitration agreement is enforceable in its own right. Plaintiff argues that he "did not knowingly or voluntarily agree to arbitration." (Pl. Response at 1.) Plaintiff also argues that the arbitration agreement is procedurally and substantively unconscionable, and that enforcement of it would undermine the federal protections he is granted under the Uniformed Services Employment and Reemployment Rights Act (USERRA) and the Americans with Disabilities Act (ADA). (Pl. Response at 2.) The Court finds that Plaintiff's signature constitutes valid acceptance of the contract's arbitration agreement, and that the arbitration agreement is neither unconscionable nor an infringement of Plaintiff's federal protections under USERRA or ADA.

##### 1. Formation

Plaintiff disputes whether he signed the arbitration agreement at all, citing an email to defense counsel in which he stated "I would like to make it clear that I have never agreed to, nor signed, any arbitration agreement with EoS Fitness" and requested a copy of the

document. (Pl. Sur-Reply at 1, 5.) Defendant argues the exact opposite, stating that "Plaintiff does not dispute that he electronically signed and acknowledged the [arbitration agreement]." (EōS Reply at 2.) Courts have consistently held that electronic signatures, even using an auto-fill feature, are legally binding. *Holley v. Bitesquad.com, LLC*, 416 F. Supp. 3d 809, 821 (E.D. Ark. 2019); *Wright v. Hernandez*, 49 S.W. 744, 756–61 (Tex. App. 2015); *Stubbins v. Spring Valley Hospital Medical Center*, 2025 WL 70775763 at *4 (D. Nev. Mar. 4, 2025). Thus, regardless of whether Plaintiff states he does not remember signing the arbitration agreement as part of his onboarding documents, Plaintiff's electronic signature on the arbitration agreement indicates his assent to contract, and valid contract formation occurred. (Employment Contract at 24.)

### 2. Unconscionability

In his Response and Sur-Reply, Plaintiff argues that the arbitration agreement should not be enforced because it is both procedurally and substantively unconscionable. Arizona recognizes two types of unconscionability: procedural, which arises in the bargaining process at the time of contract formation, and substantive, where the contract terms are *per se* unconscionable. *Nickerson v. Green Valley Recreation, Inc.*, 265 P.3d 1108, 1117 (Ariz. Ct. App. 2011). "The determination of whether a contract is unconscionable is to be made by the trial court as a matter of law." *Id.*

#### a. Procedural Unconscionability

In support of his procedural unconscionability argument, Plaintiff alleges that "[t]he arbitration clause was embedded in onboarding documents with no explanation or negotiation." (Pl. Response at 2.) However, Arizona courts have consistently held that "contracts of adhesion are not *per se* unenforceable." *Longnecker*, 23 F. Supp. 3d at 1109. "Even where terms are non-negotiable or the weaker party does not understand all of them, an agreement will be enforced so long as it is neither unreasonable nor unduly oppressive." *Adams v. Conn Appliances Inc.*, Case No. CV-17-00362-PHX-DLR, 2017 WL 3315204 at *3 (D. Ariz. Aug. 3, 2017) ("Mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement."). Nowhere in briefing does Plaintiff assert that the

- 5 -

arbitration agreement was either unreasonable or unduly oppressive—he instead argues that the unconscionability of the agreement rests on an alleged "widespread lack of awareness" of the agreement and the fact that the document was included in an online packet of onboarding documents. (Pl. Sur-Reply at 2–3; Pl. Response at 2.) The Court agrees with Defendant that the arbitration agreement was clearly set apart from the other agreements within the documents by section headers and bold and all-caps text. (EōS Reply at 6.) Additionally, the alleged "widespread lack of awareness" among employees of the provisions of the contracts they signed does not suggest that those provisions meet the standard of unreasonableness or undue oppression. *See Adams*, 2017 WL 3315204 at *3. The Court finds no reason that a clearly-defined agreement—of which Plaintiff does not assert the requisite unreasonableness or oppression in formation—should be found procedurally unconscionable.

### b. Substantive Unconscionability

Plaintiff presents five arguments regarding substantive unconscionability: (1) that the arbitration agreement prevents him "from pursing serious federal claims in a public court," including his claims under USERRA; (2) that arbitration rather than court proceedings will cause Plaintiff further mental health issues; (3) that as a *pro se* plaintiff the arbitration process will be inequitable; (4) that Plaintiff's defamation claim is a "matter of public concern" that requires adjudication in a public forum; and (5) that his claim regarding alleged Adderall distribution among employees requires adjudication in a public forum.[3] (EōS Reply at 2, 3–4.) In each of those arguments, Plaintiff alleges that compelling arbitration will prevent a fair or just outcome, triggering substantive unconscionability. "Substantive unconscionability concerns the actual terms of the contract and whether they are overly oppressive or unduly harsh to one of the parties." *Rizzio v. Surpass Senior Living*

---

[3] In briefing, neither party categorizes points (2), (3), (4), or (5) as part of a substantive unconscionability argument, instead presenting them as separate arguments for or against compelling arbitration. However, the Court sees each of those arguments as related to the substance of the arbitration agreement and whether the impact of its terms is unduly harsh or oppressive. Thus, in the interest of both efficiency and clarity, the Court will discuss them together.

- 6 -

*LLC*, 492 P.3d 1031, 1035 (Ariz. 2021). It is only the impact of the actual terms of the contract with regard to Plaintiff and Defendant, not the surrounding circumstances, that is relevant to a substantive unconscionability inquiry. Thus, Plaintiff's arguments (2), (3), (4), and (5) are immaterial to a substantive unconscionability inquiry. The Court agrees with Defendant that Plaintiff's mental health has no bearing on whether arbitration should be compelled and is also not within the Court's discretion in making that determination. *See Chiron Corp.*, 207 F.3d at 1130 (holding that in determining whether to compel arbitration, a court may only consider (1) if a valid arbitration agreement exists and (2) if the agreement encompasses the dispute at issue). Additionally, Plaintiff's status as a *pro se* litigant does not absolve him from contractual terms of arbitration, nor their enforcement by a court. *Carter v. C.I.R.*, 784 F.2d 1006, 1008 (9th Cir. 1986). Finally, whether a claim may reflect a "broader pattern" of adverse conduct with a level of "public concern," as Plaintiff contends his defamation and unsafe practices claims do (Pl. Response at 3), is not a factor that courts may consider in determining whether to compel arbitration.[4] *See Chiron Corp.*, 207 F.3d at 1130.

Plaintiff's first point—that the arbitration agreement prevents him "from pursuing serious federal claims in a public court"—is the only of his claims with the potential to impact a substantive unconscionability inquiry. (EōS Reply at 2.) However, Plaintiff's argument falls short of establishing the level of oppression or undue harshness required to establish substantive unconscionability. While Plaintiff correctly states that the arbitration agreement prevents him from pursuing his claims *in a public court*, the arbitration agreement provides a different forum for him to pursue those claims. Substantive unconscionability stems from a determination of whether an agreement allows or prevents plaintiff to "vindicate her rights." *Rizzio*, 492 P.3d at 1037. The arbitration agreement does not prevent Plaintiff from vindicating his rights—it only prescribes the forum in which he may pursue such vindication. Requiring that disputes be handled through arbitration,

---

[4] The Court also agrees with Defendant that Plaintiff's claim that individual employees' illegal Adderall distribution is not a cause of action against Defendant, but rather individual employees, and thus is immaterial here.

without any additional burdens like that of financial burden or hardship that would impact a litigant's ability to pursue his claim, does not render an agreement substantively unconscionable. *See id.* at 1035. Thus, Plaintiff's first argument does not establish substantive unconscionability, and the arbitration agreement is not void for unconscionability.

### c. Federal Protections

Plaintiff argues that compelling arbitration on this issue would undermine the federal protections he is granted under USERRA and ADA. (Pl. Response at 2.) He contends that in *Garrett v. Circuit City Stores, Inc.* the Fifth Circuit "recognized that compelling arbitration in cases involving USERRA may be inappropriate when it suppresses federally protected rights and matters of public interest."[5] (Pl. Response at 2.) However, the *Garrett* court held that "USERRA claims are subject to arbitration under the FAA" because "[i]t is not evident from the statutory language that Congress intended to preclude arbitration." *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 667, 681 (5th Cir. 2006). In fact, the *Garrett* opinion highlighted "the favored status of arbitration in the employment context when an individual subject to an arbitration agreement alleged a violation of federal discrimination statutes." *Id.* at 674. Plaintiff's suggestion that the Fifth Circuit held otherwise is erroneous. The Ninth Circuit also corroborated the applicability of arbitration to USERRA claims, holding that there is no evidence "that the legislative history [of USERRA] evinces Congress's intent to prevent the enforcement of [an] arbitration agreement." *Ziober v. BLB Resources, Inc.*, 839 F.3d 814, 821 (9th Cir. 2016). This Court has held similarly with respect to ADA claims, finding that "[n]othing in the text of the ADA precludes an individual from agreeing to arbitrate disability discrimination claims." *Morris v. Pacific Dental Services LLC*, Case No. CV-22-00370-TUC-JGZ, 2023

---

[5] Plaintiff also asks the Court "to take into account the continuing nature of the harassment and retaliation," "to the extent [Defendant] may argue that any part of [the USERRA] claim is time-barred." Defendant does not argue that, and instead argues that "the statute of limitations on Plaintiff's USERRA claim is not at issue." Because the parties do not dispute that fact, and because the issue has no bearing on the Court's decision whether to compel arbitration, the Court will not discuss it.

WL 4826142 at *7 (D. Ariz. July 27, 2023). Compelling arbitration in this issue thus does not frustrate Plaintiff's federal protections under USERRA or ADA.

### B.     Arbitration Policy Applicability

The second prong in resolving a motion to compel arbitration under the FAA requires a determination of whether the arbitration policy is applicable to the dispute at issue. *Lifescan, Inc.*, 363 F.3d at 1012. Plaintiff does not raise the issue of whether the arbitration agreement applies on its face to his central discrimination claims, but rather argues that the arbitration agreement should not apply because (1) the contract in which the arbitration agreement is housed lists a different employment location than that at which he worked most frequently, and (2) a change in his employment status during the period in question rendered the agreement inapplicable after the change. (Pl. Response at 1; Pl. Sur-Reply at 1–2.)

#### 1.     Employment-Related Claims

The arbitration agreement mandates that "all disputes relating to or arising out of an employee's employment with EōS Fitness or the termination of that employment," including claims stemming from the Title VII of the Civil Rights Act of 1964 and similar statutes, as Plaintiff's claims do, be resolved through arbitration. (Employment Contract at 24; Compl. at 1.) In determining whether to compel arbitration, a court must first determine whether the arbitration agreement encompasses the dispute at issue. *Lifescan, Inc.*, 363 F.3d at 1012. The dispute at issue here surrounds Plaintiff's various employment discrimination claims against EōS Fitness, as outlined in the Complaint:

> Termination of my employment; Failure to promote me; Failure to accommodate my disability; Retaliation; Terms and conditions of my employment differ from those of similar employees; Harassment; Other Discrimination; Workplace Defamation; Creating a Hostile Work Environment; Illegal Distribution of Controlled Substances.

(Compl. at 1–2.) Plaintiff alleges in his Complaint that all of those issues happened at EōS Fitness's Mesa, Arizona location. (Compl. at 2.) Given both the location and substance presented by Plaintiff in both the Complaint and briefing, each of those claims necessarily

- 9 -

relates to and arises out of his employment with EōS Fitness. Thus, the arbitration agreement applies to the claims raised by Plaintiff.

### 2. Location

Plaintiff argues that regardless of whether the arbitration agreement applied to the substance of his claims, it should not apply to this issue at all because the offer letter attached to the employment contract in which the arbitration agreement is housed references a position at Defendant's Ahwatukee location, whereas Plaintiff worked primarily at the "Ray and Rural" facility. (Offer Letter; Pl. Response at 1.) Plaintiff alleges that such a discrepancy indicates that "the contract does not apply to the facility where [he] worked," making the arbitration agreement unenforceable here. (Pl. Response at 1.) However, both the letter and the arbitration agreement refer to "the Company," which the letter defines as "Fitness Alliance, LLC dba EōS Fitness." (Offer Letter; Employment Contract at 24–25.) The arbitration agreement does not refer to a specific location—whether the Ahwatukee location cited in the offer letter, the Mesa location cited in the Complaint, or the Ray and Rural location cited in Plaintiff's briefing. In short, Plaintiff contracted with the larger company, not the specific location, and at each location he worked, he remained employed by Fitness Alliance, LLC—the party which with he contracted. The arbitration agreement applies to any and all EōS Fitness locations at which Plaintiff worked, regardless of the fact that his original offer of employment specified the Defendant's Ahwatukee location. Therefore, the arbitration agreement does apply to his claims, regardless of which EōS Fitness location Plaintiff was working at during the time of the alleged conduct.[6]

. . .

. . .

---

[6] In his Complaint, Plaintiff alleges that "[t]he discriminatory conduct occurred at: 2156 E Baseline Rd, Mesa, AZ 85204." (Compl. at 2.) In his Response, Plaintiff alleges that he worked at a "different facility located at Ray and Rural." (Pl. Response at 1.) It is unclear at which location or locations the alleged illegal conduct occurred, and the Court will not analyze the question further because the arbitration agreement applies to any EōS Fitness location at which Plaintiff worked.

- 10 -

### 3. Employment Status

Plaintiff next argues that, even if the arbitration agreement was valid, enforceable, and applicable when first signed, it was no longer applicable by the time the alleged discriminatory conduct occurred. (Pl. Response at 1.) Plaintiff alleges that he was laid off in 2020, and upon his return several months later was not asked to sign a new arbitration agreement. (Response at 1.) Plaintiff suggests that, as it was part of the original employment contract, the original arbitration agreement was terminated when he was laid off in 2020, and without a replacement it is unenforceable. (*See* Pl. Response at 1.) Defendant argues in the Reply that Plaintiff was not laid off in 2020, but rather placed on "unpaid furlough [. . .] as a result of the COVID-19 pandemic" and returned the following month "[a]fter the furlough ended." (EōS Reply at 2–3.) Defendant contends that all hourly employees were placed on unpaid furlough and informed, through a furlough notice, that they remained active employees with the company and that EoS was not terminating the employment relationship." (EōS Reply at 2–3; Bermingham Decl. ¶ 9.) Plaintiff does not dispute that he received the furlough notice or that, as an hourly employee, it applied to him. (*See* EōS Reply, Ex. 3.) The furlough notice explained the process of furlough, the standard unemployment benefits that employees should receive, and an implication that all employees will eventually return to their positions ("We look forward to reopening our doors with you by our side."). (EōS Reply, Ex. 2.)

While generally the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," "where the issue is whether there exists an agreement to arbitrate, the party seeking to enforce an arbitration agreement bears the burden of showing that it exists." *Hoffman*, 546 F.3d at 1082; *Longnecker*, 23 F. Supp. 3d at 1106. The Court recognizes that the situation at issue is more complicated—the dispute is not whether an agreement ever existed, but rather whether one still exists now or was terminated in 2020—but the legal standard still applies. Here, Defendant has met this burden. Defendant provided evidence that Plaintiff, along with all other hourly employees, was placed on furlough—not terminated—and was notified of his employment status as

such. The evidence presented by Defendant is sufficient to establish that Plaintiff's employment was not terminated in 2020. As such, the arbitration agreement was not terminated at that time either and is enforceable in the current dispute.

### C.  Summary Judgment Standard

Plaintiff has failed to establish that the arbitration is unenforceable for unconscionability or an infringement of federal protections, or that it is not applicable to the dispute at issue because of Plaintiff's working location or employment status. Defendant has sufficiently established that Plaintiff's employment was not terminated in 2020, leaving the arbitration agreement intact during the period in which the alleged discriminatory conduct occurred. "A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56, Fed. R. Civ. P." *Coup*, 823 F. Supp. 2d at 939. "Only where there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist*, 925 F.2d at 1141. Here, there is no genuine issue of fact concerning the enforceability of the arbitration agreement, and Plaintiff has not provided evidence that it is invalid or unenforceable in the instant dispute.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Compel Arbitration (Doc. 17).

**IT IS FURTHER ORDERED** that the parties shall submit their dispute to arbitration under the terms of their arbitration agreement.

**IT IS FURTHER ORDERED** staying this action pending the completion of arbitration. The parties shall file a joint status report within 14 days of the entry of a final decision by the arbitrator, or by **January 23, 2026**, whichever is sooner.

Dated this 15th day of July, 2025.

Honorable John J. Tuchi
United States District Judge

- 12 -